IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 74,612






CHARLES ELVIN WHITAKER, Appellant



v.



THE STATE OF TEXAS






ON APPELLANT'S DIRECT APPEAL ON 

DENIAL OF MOTION FOR FORENSIC DNA TESTING 

FROM THE 411TH JUDICIAL DISTRICT COURT 

OF POLK COUNTY, TEXAS





 Keasler, J., delivered the opinion for a unanimous Court.


O P I N I O N 



 Charles Elvin Whitaker was convicted of the capital murder of Aline Berry and was
sentenced to life in prison. He filed a motion for forensic DNA testing, which the trial court
denied. Whitaker appeals, arguing that the trial judge erred in various respects. We disagree
and affirm the trial court's judgment.

Factual History

 The Court of Appeals set forth the facts of this case as follows:

 Charles Whitaker, Fred McGregor, and Danny Hill conspired for several
hours to rob seventy-six year old Aline Berry, the owner and manager of the
Berry Motel in Corrigan, Texas. In the middle of the night, they entered Ms.
Berry's residence at the motel through an unlocked patio, found her in bed, and
held her down while they tied her feet with electrical cord and her hands with
pantyhose. Searching for money, they ransacked her home while she lay bound
on her bed. The men took a money bag found at the residence and then fled the
scene. McGregor left first to get the car. After McGregor brought the car
around to the motel, Hill exited the residence and got into the car where he and
McGregor waited for one or two minutes for Whitaker to come out of the
residence. McGregor testified that when Whitaker reached the car, he
(Whitaker) stated he had struck Ms. Berry and "laid the bitch to rest." The three
men then drove to Hill's residence where they split the money.


 James Riley, chief of police in Corrigan, Texas, arrived at the scene and
found Ms. Berry, tied hand and feet, lying dead on her bed. He testified that her
residence was in total disarray. He also stated it was known in the community
that Ms. Berry kept large sums of money at her home; for that reason, Riley had
previously advised her to make regular deposits rather than keep the money at
her residence.


 Investigator B.W. Emmons of the Montgomery County Sheriff's
Department testified the cabinets had been opened in Ms. Berry's home, almost
all the drawers in the home had been dumped to the floor, and the freezer was
left open. The door to her safe was also standing open. On the bed next to Ms.
Berry's body was a .22 pump rifle. The stock on the weapon was broken, and
two large wooden splinters, which appeared to have come from the rifle's
broken stock, were also found on the bed.


 Vladimir Parungao, the assistant medical examiner of Harris County who
performed the autopsy on Ms. Berry's body, stated Ms. Berry died from a blow
to the right side of her head. He testified the cause of Ms. Berry's death was
"suppressed head due to blunt trauma to the head." The dimensions of the end
of the rifle butt were consistent with the dimensions of the depressed area on
Ms. Berry's skull. Parungao further testified he observed contusions on the left
upper and lower lip, a contusion on the left side of the jaw, a faint linear abrasion
on the left side of the face, and imprints where the wrists and ankles were tied. (1)


Procedural History

 Whitaker filed his motion for DNA testing and request for appointment of counsel in
April, 2002. In it, he requested testing of the "alleged murder weapon," presumably the rifle
butt and stock. In June, he filed his affidavit in support, and in December, the Polk County
District Clerk filed an affidavit verifying that State's Exhibits 29 and 30, the rifle butt and the
stock, still existed, were in her custody, were in a condition making DNA testing possible, and
had been subjected to a chain of custody sufficient to establish that they had not been
substituted, tampered with, replaced, or altered in any material respect. 

 Later that month, the trial judge signed Whitaker's proposed findings of fact and order
granting DNA testing. A week later, the judge withdrew the order, noting that he had "not had
[the] benefit of reading the State's response." The State's Amended Response (no original
response is in the record) was filed in January 2003. In it, the State argued that Whitaker failed
to satisfy Art. 64.03(a)(2) because he failed to establish that a reasonable probability existed
that he would not have been prosecuted or convicted if exculpatory results were obtained
through DNA testing. In March 2003, the trial judge entered her order denying Whitaker's
motion due to the failure to meet the requirements of Art. 64.03(a)(2). 

 Whitaker appeals, asserting three points of error. He contends that the trial judge erred
in denying his motion because he established a prima facie case that he was entitled to DNA
testing and the State failed to rebut that case. He also argues that the trial judge erred in failing
to conduct a hearing on the motion and in concluding that he failed to satisfy Art. 64.03. 

 After September 1, 2003, appeals from DNA motions in which the defendant was
convicted of capital murder and sentenced to life go initially to the courts of appeals. (2) But
since Whitaker's DNA motion was filed before that date, the previous law applies, and the
appeal is properly to this Court.

Analysis


 A court may order forensic DNA testing if it finds three things: (1) that the evidence
"still exists and is in a condition making DNA possible;" (3) (2) that the evidence "has been
subjected to a chain of custody sufficient to establish that it has not been substituted, tampered
with, replaced, or altered in any material respect;" (4) and (3) that "identity was or is an issue in
the case." (5) However, the convicted person bears the burden of establishing, by a preponderance
of the evidence, that "a reasonable probability exists that the person would not have been
prosecuted or convicted if exculpatory results had been obtained through DNA testing." (6) This
means that the convicted person must show a reasonable probability exists that exculpatory test
results would prove his innocence. (7) We defer to the "trial court's determination of issues of
historical fact and application-of-law-to-fact issues that turn on credibility and demeanor,
while we review de novo other application-of-law-to-fact issues." (8) 

 We turn first to Whitaker's second point of error, in which he argues that the trial judge
erred in failing to conduct a hearing. Whitaker concedes that we held in Rivera v. State that
"[n]othing in Article 64.03 requires a hearing of any sort concerning the trial court's
determination of whether a defendant is entitled to DNA testing." (9) He argues Rivera is
distinguishable because there, the State offered an affidavit in response to the appellant's
affidavits. In contrast, Whitaker argues, in this case the State offered nothing to rebut
Whitaker's affidavits. Because of that, he argues, "the Court should have had a hearing, to hear
evidence from the State, or the Court had to rule in the Applicant's favor since Applicant is the
only one to have produced evidence before the Court."

 Whitaker is mistaken. Nothing in Chapter 64 requires the trial court to conduct a
hearing, regardless of whether the State attaches affidavits to its response. We agree with the
First Court of Appeals that "[n]o evidentiary hearing is required, and the state is not required
to accompany its response with affidavits." (10) We overrule Whitaker's second point of error.

 Whitaker argues in his first point of error that he established a prima facie case
demonstrating his entitlement to DNA testing and the State failed to rebut that case. He claims
the State's failure to submit any affidavit in response to his affidavit required the trial judge to
rule in his favor. Whitaker misunderstands the nature of Art. 64.03.

 That statute requires the trial judge to make certain findings before ordering DNA
testing. It does not establish any presumptions in favor of the applicant when no response is
filed by the State. The trial court may make findings for or against an applicant regardless of
any response from the State. Whitaker's first point of error is overruled.

 Finally, Whitaker argues in his third point of error that the trial judge erred in finding
that he did not satisfy Art. 64.03(a)(2). Whitaker claims in his brief that a test would reveal
that another individual committed the murder. He does not elaborate. The State responds that
there was no evidence at trial whether the blood on the murder weapon belonged to Whitaker,
the victim, or a mixture of both. As a result, the State implies, a DNA test would be
meaningless.

 We agree with the State. Regardless of whose blood is on the rifle, other evidence at
trial established Whitaker's guilt, including his statement that he had killed the victim. 

 We agree with the trial judge that Whitaker failed to establish by a preponderance of
the evidence that he would not have been prosecuted or convicted if exculpatory results had
been obtained through DNA testing. Whitaker's third point of error is overruled.

Conclusion

 The trial court did not err in denying Whitaker's motion for forensic DNA testing. We
affirm the trial court's judgment.


DATE DELIVERED: January 14, 2004


PUBLISH







 
1. Whitaker v. State, 977 S.W.2d 869, 871-72 (Tex. App. - Beaumont 1998, pet. ref'd).
2. Tex. Code Crim. Proc. art. 64.05 (Vernon 2003).
3. Id. at art. 64.03(a)(1)(A)(i).
4. Id. at art. 64.03(a)(1)(A)(ii).
5. Id. at art. 64.03(a)(1)(B).
6. Id. at art. 64.03(a)(2)(A).
7. Rivera v. State, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002).
8. Id.
9. Id. at 58-59.
10. Cravin v. State, 95 S.W.3d 506, 509 (Tex. App. - Houston [1st Dist.] 2002, pet.
ref'd).