In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00056-CR
______________________________


LOUANNE LARSON, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 115th Judicial District Court
Marion County, Texas
Trial Court No. 10,846


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

            Louanne Larson has appealed from the denial of her motion for DNA testing. The appeal
was initially filed with the Texas Court of Criminal Appeals. That court determined that such an
appeal is properly made to the court of appeals and transferred the appeal to this Court for review.
            Larson's conviction for capital murder was affirmed ten years ago on direct appeal to this
Court. Larson v. State, 890 S.W.2d 200 (Tex. App.—Texarkana 1994, pet. ref'd).


 In the underlying
offense, she and Tim Rule were convicted of capital murder. Two individuals were killed in an
execution-style slaying at a club owned by Larson, and there is evidence that she, Rule (who was her
boyfriend), and Tim Rice were alone in the club with the two victims when they were killed. The
evidence that Larson was present during the shooting is based on the testimony of her two
codefendants and on evidence that the victims were killed with her 9 mm pistol, two pairs of
blood-stained pants (with the blood being a type consistent with one victim) discovered during the
search of her home, and the existence of minuscule blood splatters on the ceiling of her office at the
club. Rice and Rule loaded the bodies into garbage cans and carried them away in the trunk of
Larson's former husband's automobile. She did not contest the sufficiency of the evidence to support
the verdict in her direct appeal. 
            We also note that the case was tried twice, with a hung jury in the first trial, and that Rice
changed his story four different times and then refused to testify during the second trial. After the
first trial, Rule and Larson jumped bail and were recaptured in Mexico. We reversed Rule's
conviction, and he entered a negotiated plea agreement on murder, for twenty years, after remand. 
We affirmed Larson's conviction in an opinion that contained both a concurrence and a dissent.
Larson, 890 S.W.2d 200. 
The DNA Question
            Larson contends the trial court should have ordered a DNA analysis because, if a trace DNA
testing is done on the inside of the blue pair of Wrangler jeans, it would tend to prove she is innocent
of the crime. 
            Her argument is this: the blood splatter from the shooting was found on the outside of the
jeans—and she does not argue that the jeans were not present at the shooting. She argues that she
was not there and that someone else was wearing them. She therefore asks that DNA testing be done
on the inside of the jeans, claiming they were not worn by her—and that, if DNA from another
person was found inside the jeans, then it would tend to show she was not present at the murder. She
has specifically asked that her former boyfriend, Rule, who is in prison, be tested to determine
whether there is a match between his DNA and that found in the jeans. The jeans are described as
men's size 32-32 blue jeans. The trial court considered the motion and the State's response, and
denied the request. 
The Requirements
            A trial court cannot grant a convicted person's request for DNA testing unless the
requirements in Article 64.03 are met. Dinkins v. State, 84 S.W.3d 639, 643 (Tex. Crim. App.
2002). Under the statute, a court may order forensic DNA testing if it finds three things: (1) that the
evidence still exists and is in a condition making DNA testing possible; (2) that the evidence has
been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered
with, replaced, or altered in any material respect; and (3) that identity was or is an issue in the case. 
The convicted person also bears the burden of establishing, by a preponderance of the evidence, that
a reasonable probability exists that the person would not have been prosecuted or convicted if
exculpatory results had been obtained through DNA testing. This means that the convicted person
must show a reasonable probability exists that exculpatory test results would prove his or her
innocence.


 Whitaker v. State, No. 74612, 2004 WL 63981, at *2 (Tex. Crim. App. Jan. 14, 2004).
            We defer to the "trial court's determination of issues of historical fact and
application-of-law-to-fact issues that turn on credibility and demeanor, while we review de novo
other application-of-law-to-fact issues." Id.
            All three of the requirements are relevant here. The trial court did not make any specific
rulings, simply denying the motion without comment. The information provided by the State shows
that this particular piece of evidence still exists and is in the custody of the State. Thus, the first
requirement is met.
            The State argues the trial court was correct because there was no showing there was any
specimen in the jeans to be tested. Although correct, it is unlikely that such could be known without
actually making the effort to find such a specimen—which has not occurred. The State's position
is not reasonable in this context. The State argues that many people have handled the items over the
years. However, Larson has asked specifically only for testing to determine whether Rule's DNA
was on the inside of the jeans and to determine whether her own DNA was there. As pointed out
by the State, it is possible that her own DNA might not be on the jeans, or that some other person's
DNA might be found who handled the jeans. That is not the correct question, because her request
is limited to whether Rule's or her DNA was found inside the jeans. Thus, the second requirement
is adequately shown. 
            At trial, although the jeans were men's jeans, the State argued that, because Rice had a
thirty-six-inch waist, he could not have been wearing them, that the jeans were approximately the
same size as a pair of red jeans that were admittedly Larson's, and that she may have been wearing
the jeans in question that night. Thus, the State used the jeans as a substantive link in its
circumstantial evidence case. 
            The State also argues testing was unnecessary because there was overwhelming evidence of
her guilt. That description is excessive. As set out above, there was a substantial amount of
circumstantial evidence that could point to her as one of the killers. All of that evidence, however,
could also be said to support her defensive theories. For example, the pistol was hers, but there was
testimony it was kept in the office. The pistol was traded by Rule to Larson's aunt for a smaller
weapon, but Larson told the police where to recover it. The testimony of Rule places Larson in the
office at the time of the shooting. However, in his statement, Rule said that Rice came out of the
office after the shooting, told him he (Rice) had killed those two, and threatened to kill both he and
Larson and threatened his family unless he helped Rice dispose of the bodies. Rule, 890 S.W.2d at
165. At least one version of Rice's testimony at the first trial, which was read into evidence at the
second trial, accused her instead as one of the shooters. In other testimony, Larson's former husband
(who actually owned the Lincoln in which the bodies were transported) testified she was using drugs
at the time, and he told her about a week before the murders that one of the victims was stealing
money from her and that she had put a pistol to his head and pulled the trigger without a shell in the
chamber to scare him. 
Application of the Final Requirement
            The final requirement entails that "convicted persons . . . show a reasonable probability exists
that exculpatory DNA tests would prove their innocence." That showing has not been made if
exculpatory test results would "merely muddy the waters." Kutzner v. State, 75 S.W.3d 427, 438–39
(Tex. Crim. App. 2002). 



            The Kutzner standard requires Larson to show a reasonable probability exists that exculpatory
DNA tests would prove her innocence. In this case, Larson proposes that the test would show that
Rule was wearing the jeans. Based on the other evidence, it is absolutely clear that whoever was
wearing those jeans was at the site of the murder, and close enough to the victim for blood to splatter
on the clothing. As we pointed out in our initial opinion, there was no evidence placing Rule as a
shooter, or in the office at the time of the killing. If the test showed such, then most of the State's
evidence would abruptly be considered in an entirely different light. We cannot conclude that the
State's evidence in this case was overwhelming, as is quite clearly shown by its failure to convince
the first jury that heard the entirety of the evidence (including the live testimony of Rice instead of
the canned version read to the second jury).
            In this case, Larson argues that, because of the weakness of the State's case, and the lack of
credibility of the only witness who named her as a shooter (Rice), because of his multiple versions
of the events of the night of the murder, the discovery of Rule's DNA on the inside of the jeans, but
not hers, would have caused the State's case to collapse. 
            Considering all of the foregoing, a DNA test would have four possible results:
1. No DNA is recoverable, or none is found either from Rule or Larson.
            Result: no showing of innocence.
2. DNA from Larson is recovered, but not Rule.
            Result: no showing of innocence.
3. DNA from Larson and Rule is recovered.
            Result: no showing of innocence.
4. DNA from Rule is recovered, but not Larson.
Result: a showing that Rule at one time wore the jeans—although not when he wore them.
            Under the Kutzner standard requiring Larson to show a reasonable probability exists that
exculpatory DNA tests would prove her innocence—that does more than "muddy the waters," we
cannot find she met her burden. The theory set out by Larson creates the beginning point for one
possible chain of reasoning that would have the potential to cast doubt on a substantial theory of the
State. 
            It does not, however, reach the "reasonable probability" level required by the statute. Neither
could the DNA tests tell the fact-finder when a particular person was wearing the jeans. We cannot
say from this sequence of possible outcomes that the evidence would be sufficiently strong to require
this Court to conclude that a positive test for Rule's DNA inside the jeans would have caused the
State's case to collapse. Under the Kutzner formulations, and the cases following that formulation
before the amendment of the statute, we cannot find that Larson met the requisite burden that would
require DNA testing under these facts.
            We conclude that, under the facts of this case, there is not a reasonable probability the DNA
testing would yield exculpatory results that would probably result in Larson's acquittal. 
            We affirm the order.
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          August 10, 2004
Date Decided:             November 30, 2004

Do Not Publish