IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00024-CR

 

John Byron Yarbrough,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 249th District Court

Johnson County, Texas

Trial Court No. 27602

 



Opinion



 








            John Byron Yarbrough appeals from the
denial of his motion for postconviction DNA testing under Chapter 64 of the
Code of Criminal Procedure.  Yarbrough contends in two issues that the court
erred by: (1) denying his motion for DNA testing; and (2) denying his motion to
issue a bench warrant so he could participate in the hearing on his request for
DNA testing.  We will affirm.

 

 

Background

            Yarbrough and co-defendant Milton
Brumfield were convicted of capital murder for fatally shooting Jerry Lee Shaw
in a roadside restroom during the course of a robbery.  Two eyewitnesses stated
that they heard gunshots fired within 20-30 seconds after Shaw entered the
restroom.  An African American male and a Caucasian[1]
male immediately ran from the restroom.  One of the eyewitnesses identified
Brumfield as the African American.[2] 
They both stated that Brumfield and his companion left the scene in a red car
which appeared to be a Ford Escort or Mercury Lynx and had the numerals 8 and 9
included in the license plate number.  Yarbrough owned a red Mercury Lynx with license
plate number 898 MMR.  Brumfield gave a series of written statements admitting
that he participated in the crime.  Brumfield stated that Yarbrough and he had
entered the restroom that night for the purpose of robbing someone.  He said
that Yarbrough is the one who shot Shaw.[3]

            A jury convicted Yarbrough of capital
murder in 1990 and made the necessary findings for a death sentence.  The Court
of Criminal Appeals reversed the conviction and ordered a new trial because of
significant inaccuracies in the statement of facts which could not be
corrected.  See Yarbrough v. State, No. 71,226, slip op. at 2 (Tex. Crim. App. Mar. 17, 1993) (per
curiam) (not designated for publication); Tex. R. App. P. 50(e), 707-708 S.W.2d (Tex. Cases) lxii-lxiii
(Tex. Crim. App. 1986, amended 1997) (current version at Tex. R. App. P. 34.6(f)).  On remand,
Yarbrough pleaded guilty after the State agreed to waive the death penalty, and
the court sentenced him to life imprisonment.

            Yarbrough later filed a motion for
appointment of counsel to obtain postconviction DNA testing under Chapter 64. 
The court appointed Yarbrough’s trial counsel to represent him in these
proceedings.  Counsel filed a motion for DNA testing without identifying any
particular evidence to be tested.  Counsel and Yarbrough himself both filed
motions for a bench warrant so Yarbrough could appear at the hearing on the
motion for DNA testing.

            The State filed a motion asking the
court to deny Yarbrough’s request for DNA testing.  In this responsive motion,
the State identified the evidence in its possession which could conceivably be
tested and argued that the request should be denied because (1) identity was
not an issue at trial and (2) exculpatory results would not establish by a preponderance
of the evidence that Yarbrough would not have been convicted if those results
had been available at trial.  The State supported its motion with the affidavit
of one of the investigators who participated in Yarbrough’s case.  The investigator’s
affidavit, in turn, was supported by eyewitness statements, several statements
given by Yarbrough’s co-defendant Brumfield, the victim Shaw’s autopsy, and
other documentary evidence.

            Following a hearing on Yarbrough’s
motions for a bench warrant, the court denied those motions.

            The court later conducted a hearing on
the merits of Yarbrough’s motion for DNA testing.  Yarbrough argued among other
things that the court should order the State to: (1) obtain a specimen of
Brumfield’s DNA and compare it with evidence in the State’s possession such as
Shaw’s clothing; and (2) exhume Shaw’s body to check for fingernail scrapings
containing DNA and compare any results with Brumfield’s DNA and Yarbrough’s
DNA.  He further argued that eyewitness identification was inconclusive and
that additional testing would serve to either confirm or refute Brumfield’s
statements and testimony about how the offense occurred.  The State responded
that: (1) Chapter 64 does not contemplate or require the collection of
additional evidence not already in the State’s possession at the time of trial;
and (2) any exculpatory findings would only muddy the waters and would not establish
by a preponderance of the evidence that Yarbrough would not have been
convicted.

            The court denied Yarbrough’s motion
for DNA testing.  The court adopted the State’s proposed findings of fact and
its sole proposed conclusion of law.  This conclusion of law states, “The Court
concludes that the Applicant has failed his burden of proof and has not met the
requirements of Art. 64.03 § (a)(2)(A) V.A.C.C.P. and that his motion for DNA
testing should be denied.”

Applicable Law

            Article 64.01(b) provides for the
postconviction DNA testing of evidence containing biological material if that
evidence “was secured in relation to the offense that is the basis of the
challenged conviction and was in the possession of the state during the trial
of the offense.”  Tex. Code Crim. Proc.
Ann. art. 64.01(b) (Vernon 2006).  Under article 64.03(a), a court may
order testing only if:

(1) the evidence still exists in a condition
making DNA testing possible and has been subjected to a sufficient chain of
custody;

 

(2) identity was or is an issue in the case; and

 

(3) the defendant has established by a
preponderance of the evidence that:

 

(A) he would not have been convicted if
exculpatory results had been obtained from DNA testing; and

 

(B) the request for testing is not made to
unreasonably delay execution of sentence or the administration of justice.

 

Id. § 64.03(a)
(Vernon 2006).

            We apply a bifurcated standard of
review.  Rivera v. State, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002); accord
Whitaker v. State, 160 S.W.3d 5, 8 (Tex. Crim. App. 2004).  “[W]e afford
almost total deference to a trial court’s determination of issues of historical
fact and application-of-law-to-fact issues that turn on credibility and
demeanor, while we review de novo other application-of-law-to-fact
issues.”  Id.

Bench Warrant

            Yarbrough contends in his second issue
that the court erred by denying his motion to issue a bench warrant so he could
participate in the hearing on his request for DNA testing.  Our sister courts
have uniformly held that, because a Chapter 64 proceeding is collateral
proceeding, a defendant has no right to be present at a hearing on his application
for postconviction DNA testing.  Rose v. State, 198 S.W.3d 271, 272 (Tex. App.—San Antonio 2006, pet. ref’d); Booker v. State, 155 S.W.3d 259, 266 (Tex.
App.—Dallas 2004, no pet.); Thompson v. State, 123 S.W.3d 781, 784 (Tex.
App.—Houston [14th Dist.] 2003, pet. ref’d); Cravin v. State, 95 S.W.3d 506,
510-11 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d).  Because Yarbrough had
no right to be present at the hearing, the court did not err by denying his
motion for a bench warrant.  Accordingly, we overrule Yarbrough’s second issue.

Identity

            As part of his first issue, Yarbrough
contends that the issue of identity was and is at issue notwithstanding his
guilty plea.  See Tex. Code Crim.
Proc. Ann. art. 64.03(a)(1)(B).  The State disputes this contention. 
Nevertheless, the court did not make any findings or conclusions regarding
identity.  Therefore, we assume without deciding that the court did not deny
Yarbrough’s motion for DNA testing on this basis.

Evidence Subject to Testing

            Yarbrough’s first issue also expressly
challenges the court’s refusal to order that Shaw’s body be exhumed to check
for fingernail scrapings containing DNA and implicitly challenges the court’s
refusal to order the State to obtain a specimen of Brumfield’s DNA.[4]

            According to article 64.01(b), only evidence
which “was secured in relation to the offense that is the basis of the
challenged conviction and was in the possession of the state during the trial
of the offense” is subject to court-ordered testing.  Tex. Code Crim. Proc. Ann. art. 64.01(b).

            The statute on its face does not
require the State to collect additional evidence which a defendant deems
potentially exculpatory.  Rather, the scope of testing under Chapter 64 is
expressly limited to evidence collected in relation to the charged offense and
in the State’s possession at the time of trial.  Id.  Therefore, we hold
as a matter of law that the State cannot be compelled to exhume a victim’s body
to gather additional evidence for DNA testing under Chapter 64.  See Wolfe
v. State, 120 S.W.3d 368, 372 (Tex. Crim. App. 2003) (“Chapter 64
authorizes the convicting court to order DNA testing, and no more.”).  Likewise,
the State cannot be compelled to draw a blood specimen from a person who is or
may be criminally responsible for the offense, nor can the State be required to
produce a blood specimen in the possession of a state agency such as TDCJ which
was not drawn “in relation to the offense that is the basis of the challenged
conviction” and in the State’s possession at the time of trial.[5]

            Accordingly, we hold that the court
did not err by refusing to order the State to exhume Shaw’s body to check for
fingernail scrapings containing DNA or to obtain a specimen of Brumfield’s DNA.

Exculpatory Results

            Yarbrough concludes his first issue by
arguing that he established by a preponderance of the evidence that he would
not have been convicted if exculpatory results had been obtained from the
requested testing.  The State responds that exculpatory results would serve only
to muddy the waters and, because Yarbrough was prosecuted under the law of parties,
he did not make the requisite showing on this issue.

            Yarbrough contends that the trial
evidence shows that a struggle ensued between Shaw and his attackers before he
was fatally wounded.  He argues that DNA testing of clothing seized from him
near the time of the offense would reveal the absence of any blood spatter from
Shaw, that testing of Shaw’s clothing may reveal the presence of Brumfield’s
DNA, and that testing of a marihuana baggie found in Shaw’s pocket may likewise
reveal the presence of Brumfield’s DNA.[6]  To
summarize, Yarbrough argues that such test results would establish that
Brumfield rather than Yarbrough struggled with Shaw and shot him.

            The State responds that such results
would serve only to muddy the waters.  The State notes that prior testing was
negative for the presence of blood on Yarbrough’s clothing.  The State argues
that, even if further testing confirms the absence of blood on the clothing, such
a result would not necessarily exonerate Yarbrough because he could have been
standing far enough away from Shaw that there would be no blood spatter on his
clothing.  The State makes the same argument with respect to the absence of
Yarbrough’s DNA on Shaw’s clothing or the marihuana baggie.

            Under the law of parties, the State
argues that the presence of Brumfield’s DNA on Shaw’s clothing or the marihuana
baggie would not necessarily exonerate Yarbrough.  The State observes that such
testing may (or may not) lead to the conclusion that Brumfield rather than
Yarbrough was the shooter but it would not establish that Yarbrough did not
participate in the offense in some manner.  See Rodriguez v. State, No.
13-03-00150-CR, 2004 WL 1834401, at *4 (Tex. App.—Corpus Christi Aug. 12, 2004,
no pet.) (not designated for publication); Harper v. State, No.
06-03-00136-CR, 2003 WL 22977077, at *3 (Tex. App.—Texarkana Dec. 19, 2003, no pet.)
(not designated for publication); see also Torres v. State, 104
S.W.3d 638, 641 n.4 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d) (referring
in the alternative to “ample evidence” of appellant’s guilt under the law of
parties when affirming an order denying postconviction DNA testing).

            Exculpatory results would serve only
to muddy the waters regarding Yarbrough’s guilt.  See Kutzner v. State,
75 S.W.3d 427, 439 (Tex. Crim. App. 2002); Carter v. State, 134 S.W.3d 484,
486 (Tex. App.—Waco 2004, no pet.).  This is particularly true in view of the
fact that the record contains sufficient other evidence tending to connect
Yarbrough to the commission of the offense as a party.  Thus, we conclude that
Yarbrough failed to prove beyond a reasonable doubt that that he would not have
been convicted if exculpatory results were obtained.  We overrule Yarbrough’s
first issue.

We affirm the order denying Yarbrough’s motion for
postconviction DNA testing.

 




 

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed

Opinion delivered and
filed March 12, 2008

Publish

[CRPM]









[1]
              One of the eyewitnesses stated
that the “white male” “looked like he might have been Hispanic.”

 





[2]
              The other witness identified
the person in photo “number 5” in a photographic line-up as the Caucasian, but
it is not clear from the limited record before us whether Yarbrough was the
person identified.

 





[3]
              Brumfield pleaded guilty and
testified against Yarbrough.





[4]
              It is undisputed that the
remainder of the evidence referred to in Yarbrough’s brief remains in the
State’s possession in a condition making DNA testing possible and has been
subjected to a sufficient chain of custody.  See Tex. Code Crim. Proc. Ann. 64.03(a)(1)(A) (Vernon 2006).





[5]
              Yarbrough’s co-defendant
Brumfield is currently serving his prison sentence for this offense.  At the
hearing, Yarbrough argued that a specimen of Brumfield’s DNA should be obtained
either from a blood specimen allegedly taken from Brumfield when he was
initially imprisoned at TDCJ or by court order requiring that a new blood
specimen be drawn.  Yarbrough does not refer to these contentions in his
appellant’s brief but does argue that certain evidence in the State’s
possession should be tested for Brumfield’s DNA.





[6]
              Yarbrough likewise wanted to
establish the presence of Brumfield’s DNA in the fingernail scrapings he sought
to obtain from Shaw’s body.