

**In the**
**Court of Appeals**
**Second Appellate District of Texas**
**at Fort Worth**

_____

No. 02-17-00364-CR

_____

ALLEN F. CALTON, APPELLANT

V.

THE STATE OF TEXAS

_____

On Appeal from the 213th District Court
Tarrant County, Texas
Trial Court No. 0843168D

_____

Before Walker, Meier, and Kerr, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

Pro se appellant Allen Fitzgerald Calton appeals the trial court's order denying his fifth motion for DNA testing. We affirm.

## Procedural background

Calton has a fair amount of appellate experience:

- *Calton v. State*, No. 02-04-00228-CR, 2005 WL 3082202 (Tex. App.—Fort Worth Nov. 17, 2005, pet. withdrawn) (affirming conviction).

- *Ex parte Calton*, No. WR-65,590-13, 2008 WL 2223894 (Tex. Crim. App. May 28, 2008, order) (citing Calton for abuse of the writ after filing seven applications).

- *Calton v. State*, No. 02-08-00208-CR, 2009 WL 976004 (Tex. App.—Fort Worth Apr. 9, 2009, pet. ref'd) (mem. op., not designated for publication) (affirming order denying motion for DNA testing).

- *Calton v. State*, No. 02-14-00158-CR, 2015 WL 3918013 (Tex. App.—Fort Worth June 25, 2015, pet. ref'd) (mem. op., not designated for publication) (affirming order denying second motion for DNA testing).

- *Calton v. State*, No. 02-16-00113-CR, 2017 WL 2178871 (Tex. App.—Fort Worth May 18, 2017, pet. ref'd) (mem. op., not designated for publication) (affirming order denying third motion for DNA testing).[1]

---

[1]Calton has a history in federal court as well: *Calton v. Quarterman*, No. 4:07-CV-471-Y, 2008 WL 5083022 (N.D. Tex. Sept. 16, 2008) (not designated for publication) (denying habeas); *Calton v. Stephens*, No. 4:13-CV-592-A, 2013 WL 3871546 (N.D. Tex. July 26, 2013) (not designated for publication) (dismissing habeas as successive); and *Calton v. Stephens*, No. 4:14-CV-139-A, 2014 WL 818904 (N.D. Tex. Mar. 3, 2014) (not designated for publication) (dismissing habeas for abuse of the writ).

**Calton's fourth motion for DNA testing**

The missing link between Calton's above appeals (ending with his third DNA motion) and his present one (addressing his fifth DNA motion) is his fourth DNA motion. Because the State and to some extent Calton both treat his fourth and fifth motions as interrelated, we briefly address Calton's fourth motion to put the parties' respective arguments in context.

Attached to the State's brief as exhibits are Calton's fourth motion, the order denying it, and the trial court's factual findings and legal conclusions supporting its order. Calton's fourth and fifth motions are virtually identical. Apparently because the two motions are substantively the same, the State used the trial court's factual findings and legal conclusions disposing of Calton's fourth motion to support the order denying Calton's fifth motion.

But Calton did not appeal the trial court's order denying his fourth motion. If Calton had appealed, we could have taken judicial notice of any documents filed in that case, which presumably would have included the documents the State has attached to its brief in the present appeal. *See Turner v. State*, 733 S.W.2d 218, 223 (Tex. Crim. App. 1987); *Calton*, 2017 WL 2178871, at *4 n.3; *see also Rose v. Hyde*, No. 05-14-01250-CV, 2016 WL 235215, at *2 n.2 (Tex. App.—Dallas Jan. 20, 2016, no pet.) (mem. op.). Because Calton did not, we cannot.

Nor were Calton's fourth DNA motion and its related documents brought up as part of the record in this appeal, which is from the denial of his fifth motion. It is

3

well established that appellate courts may not consider attachments to briefs that are not otherwise part of the appellate record. *See Dismuke v. State*, No. 05-08-00224-CR, 2009 WL 806923, at *3 (Tex. App.—Dallas Mar. 30, 2009, no pet.) (mem. op., not designated for publication). We thus will not consider the documents attached to the State's brief when deciding this appeal.

With this understanding, we now address Calton's fifth motion.

**The offense**

Calton was convicted of attempting to murder Everett Angle on April 23, 2002. *See Calton*, 2005 WL 3082202, at *1. According to our opinion affirming Calton's conviction, Calton drove to Angle's home, where Craig Tate was working outside. *Id.* Tate then went inside Angle's home and told him that Calton was waiting for him, Angle went to Calton's car, and Angle and Calton had what appeared to be a friendly conversation. *Id.*

But at some point, Calton got out of his car, approached Angle, and shot him in the face; Angle fell to the ground. *Id.* While standing over Angle, Calton shot him a second time; the second shot glanced off Angle's skull. *Id.* Unfinished, Calton then fired a third shot at Angle's head and left. *Id.*

Angle survived. *Calton*, 2015 WL 3918013, at *1.

4

## Calton's defense at trial

At trial, Calton represented himself. *Calton*, 2005 WL 3082202, at *1. Second-guessing defense counsel's trial strategy is therefore not an option open to Calton.[2]

Calton's defense was that he was hypoglycemic and thus failed to have the requisite mens rea to intentionally commit the offense. *Calton*, 2009 WL 976004, at *2; *Calton*, 2005 WL 3082202, at *2–4. He also argued that he might have shot Angle in self-defense. *Calton*, 2009 WL 976004, at *2. His identity as the shooter was not an issue. *Id.* at *2, 4.

## Calton's fifth motion for DNA testing

By itself, Calton's fifth motion for DNA testing makes little sense in the context of the above-described offense. Calton wanted a knife tested, asserting that neither his nor Angle's DNA would be on the knife but that the true shooter's DNA would be, thereby proving his innocence.

Fortunately, shedding additional light on this argument is Calton's supporting affidavit[3] in which he asserted:

- a police officer seized a six-inch steak knife from the passenger side of Calton's car;

---

[2]Calton did, however, second-guess his decision to represent himself pro se. *See id.*

[3]Calton filed his fifth motion and supporting affidavit on September 15, 2017. The supporting affidavit was, however, missing a page. The trial court nevertheless denied Calton's motion on September 15. Calton refiled his fifth motion with a complete supporting affidavit on September 22. We rely on the complete affidavit.

- Calton drove to Angle's house with Michael Ray;

- Angle and Ray argued over money, Angle tried to cut Ray with a sharp object, and because blood was found in Calton's vehicle, Calton asserted that Angle probably succeeded;

- the Garland Police Department seized the knife, but Calton thought that the Fort Worth Police Department might now have it in its possession; regardless, Calton argued that the State had it and that he wanted it tested;

- relying on his own statement to the police,[4] Calton asserted that Angle reached into the car and tried to stab Ray and that Ray was the person who shot Angle;

- Calton concluded that if the knife was tested for DNA, it would show Ray's DNA, not Calton's or Angle's, and prove that a third person— Ray—was the shooter; and

- Calton averred that he was innocent of attempting to murder Angle.[5]

In short, Calton was trying to make identity an issue.

The trial court denied Calton's fifth motion for DNA testing on the same date that it was filed without awaiting a response from the State.

---

[4]Calton has referred to this statement before. *See Calton*, 2015 WL 3918013, at *2 n.4)

[5]*See Smith v. State*, 165 S.W.3d 361, 365 (Tex. Crim. App. 2005) ("[T]he plea of actual innocence in this pro se motion is equivalent to an assertion that there is at least a 51% chance that he would not have been convicted.").

## Calton's brief

Despite the many moving parts in Calton's efforts to get DNA testing, his appellant's brief presents one very narrow argument: he complains that the State had asserted that the knife in question was no longer available but failed to substantiate that assertion; therefore, the trial court erred. Because the State did not respond to Calton's fifth motion, we construe Calton's argument to be that without evidence contradicting his assertion that the knife was available somewhere, the trial court erred.[6]

## Discussion

Chapter 64 does not require the trial court to conduct a hearing. *Whitaker v. State*, 160 S.W.3d 5, 8 (Tex. Crim. App.), *cert. denied*, 543 U.S. 864 (2004). More importantly for our purposes, the court of criminal appeals has written that (1) no presumption favors the applicant when the State does not file a response and (2) the State's failure to file a responsive affidavit does not obligate the trial court to rule in the applicant's favor. *Id.* at 9.

Furthermore, to prevail on his motion, Calton had to meet several criteria. The code of criminal procedure provides:

> (a) A convicting court may order forensic DNA testing under this chapter only if:

---

[6]Calton appears to be responding to arguments the State made to his fourth motion.

(1) the court finds that:

    (A) the evidence:

        (i) still exists and is in a condition making DNA testing possible; and

        (ii) has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect;

    (B) there is a reasonable likelihood that the evidence contains biological material suitable for DNA testing; and

    (C) identity was or is an issue in the case; and

(2) the convicted person establishes by a preponderance of the evidence that:

    (A) the person would not have been convicted if exculpatory results had been obtained through DNA testing; and

    (B) the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice.

Tex. Code Crim. Proc. Ann. art. 64.03(a) (West 2018).[7] Missing even a single criterion would be fatal to Calton's motion. *See id.*

In its appellate brief, the State gives two reasons supporting the trial court's order denying Calton's fifth motion. First, it asserts that the knife was not available for testing, and second, it contends that Calton failed to prove by a preponderance of

[7]Neither party contests the article 64.01(a-1) and (b) requirements. *See id.* art. 64.01(a-1), (b) (West 2018).

8

the evidence that he would not have been convicted if his DNA was not on the knife. The State is effectively asserting that Calton did not meet the article 64.02(a)(1)(A)(i) and (a)(2)(A) requirements. Calton's brief attacks only the first argument.

An appellant, whether the State or the defendant, must challenge all independent grounds or bases that fully support a judgment or an appealable order. *State v. Hoskins*, No. 05-13-00416-CR, 2014 WL 4090129, at *2 (Tex. App.—Dallas Aug. 19, 2014, no pet.) (not designated for publication). "[I]f the trial court's ruling can be sustained on an independent ground the appellant must challenge all of the grounds on appeal." *Marsh v. State*, 343 S.W.3d 475, 479 (Tex. App.—Texarkana 2011, pet. ref'd) (citing *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980)). If even one unchallenged, independent ground fully supports the trial court's ruling, we must accept that unchallenged, independent ground's validity; any error in the appellant's challenged ground is harmless because the unchallenged, independent ground remains to fully support the trial court's decision. *Hoskins*, 2014 WL 4090129, at *2 (citing *Moore*, 605 S.W.2d at 926; *Marsh*, 343 S.W.3d at 479).

Although the State suggested only two bases to support the trial court's judgment, we note that on the face of Calton's fifth motion and his supporting affidavit there were numerous grounds on which the trial court could have denied Calton's motion. For example, as the State argued, there was a question about whether the knife still existed. Even assuming it did exist, there were additional questions about whether it was in a condition making DNA testing possible and

9

whether it had been subjected to a chain of custody sufficient to establish that it had not been substituted, tampered with, replaced, or altered in any material respect. *See* Tex. Code Crim. Proc. Ann. art. 64.03(a)(1)(A)(i), (ii). The trial court could have also questioned whether there was a reasonable likelihood that the knife contained biological material suitable for DNA testing. *See id.* art. 64.03(a)(1)(B). Finally, as the State noted, there was a serious question about whether Calton established by a preponderance of the evidence that he would not have been convicted if the results came back, as he speculated, with someone else's DNA on the knife. *See id.* art. 64.03(a)(2).

Even assuming the knife came back with Ray's DNA on it, that would not prove that Ray—and not Calton—shot Angle. At best, it would show that Ray's DNA was on the knife. When and how it got on the knife would require other evidence. *See LaRue v. State*, 518 S.W.3d 439, 446 (Tex. Crim. App. 2017) ("The required showing has not been made if exculpatory test results would 'merely muddy the waters.'" (quoting *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002)); *State v. Swearingen*, 424 S.W.3d 32, 38–39 (Tex. Crim. App. 2014) ("We are not persuaded that results showing the presence of another DNA donor in the fingernail scrapings would overcome the 'mountain of evidence' of the [defendant's] guilt. . . . There are many ways someone else's DNA could have ended up in the victim's fingernails.").

To get the relief Calton wanted, he had to meet certain criteria; missing even one would be fatal to his motion. *See* Tex. Code Crim. Proc. Ann. art. 64.03(a). With

so many different possibilities supporting the trial court's order, Calton had to show that the trial court erred as to all of the them. *See Hoskins*, 2014 WL 4090129, at *2 (citing *Moore*, 605 S.W.2d at 926; *Marsh*, 343 S.W.3d at 479). Because Calton attacked but one possibility, we overrule his contention. *See id.*

We affirm the trial court's order.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: October 25, 2018