

# NUMBER 13-18-00046-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**MARLIN WAYNE WEBB,**                                                        **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                        **Appellee.**

---

**On appeal from the 361st District Court
of Brazos County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Hinojosa
Memorandum Opinion by Chief Justice Contreras**

Appellant Marlin Wayne Webb contests the trial court's order denying his motion

for post-conviction DNA testing of physical evidence under chapter 64 of the Texas Code

of Criminal Procedure.  *See* TEX. CODE CRIM. PROC. ANN. ch. 64 (West, Westlaw through

2017 1st C.S.).  We affirm.[1]

## I. BACKGROUND

In 1990, appellant was convicted and sentenced to life imprisonment for the capital murder of Donald Cravens.[2]  At trial, Dennis Clay Smith testified that he and appellant robbed Cravens and that appellant shot Cravens twice in the back of the head with a .38 caliber revolver.[3]  The crimes occurred on the second floor of a movie theater Cravens owned in Bryan, Texas.  Smith further testified that, after the robbery and murder, he and appellant threw the murder weapon and the tennis shoes Smith was wearing off of a bridge into the Navasota River.  The gun and the shoes were recovered by a police dive team 138 days later.  According to appellant, by the time the items were recovered, Smith had given a statement averring that he had disposed of the shoes because Cravens' blood had spattered on them.

Appellant filed a motion in 2017 seeking post-conviction DNA testing of the shoes and the gun.  *See id.* art. 64.01(a-1).[4]  Appellant argued that, although the shoes had been tested for the presence of blood around the time of the trial, no attempt was made to extract DNA from either item.  The motion included, among other evidence, an affidavit

---

[1] This appeal was transferred to this Court from the Tenth Court of Appeals in Waco pursuant to an order issued by the Texas Supreme Court.  *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2017 1st C.S.).  Accordingly, we will apply the precedent of the Tenth Court of Appeals to the extent it differs from our own.  *See* TEX. R. APP. P. 41.3.

[2] According to both parties, appellant's conviction was affirmed by the Tenth Court of Appeals on direct appeal in appellate cause number 10-90-075-CR.  A copy of the slip opinion affirming the conviction, dated March 18, 1992, was attached to the State's response to appellant's motion for post-conviction DNA testing; however, the opinion is not available on Westlaw or on the Tenth Court of Appeals' website.

[3] Excerpts from the trial reporter's record were attached to the State's response to appellant's motion.  However, Smith's testimony does not appear in any of the excerpts.  Nevertheless, the parties appear to agree on the content of Smith's testimony.

[4] According to the parties, appellant initially filed his motion for DNA testing pro se.  However, the only motion in the record before us is an amended motion, filed on September 19, 2017 by appointed counsel.  We refer only to the amended motion in this opinion.

2

by Brandi Mohler, a DNA consultant and expert who had previously worked as a forensic scientist for the Texas Department of Public Safety (DPS). Mohler's affidavit stated in part that "[w]hen these items were examined by Texas DPS 27 years ago, DNA analysis was not available as a testing option" and "even though the tests for blood were negative, this does not preclude the presence of potential DNA material."

Appellant's motion also included an affidavit by Marc Hamlin, then the Brazos County District Clerk, who stated that the exhibits from the murder trial are "all maintained in one box" in his office; that the shoes "are contained inside a torn/open paper bag that comingles with the other evidence"; and that his office "does not maintain" the revolver. Hamlin's affidavit included photos of the evidence box, showing the "torn/open paper bag" containing the tennis shoes as well as several other pieces of evidence, including the plastic jar originally used to store the gun. Several of the items in the box appear to be contained in individual bags.

The State filed a response on November 20, 2017 arguing that the motion should be denied without a hearing because appellant did not meet the requirement of showing that the items have "been subjected to a chain of custody sufficient to establish that [they have] not been substituted, tampered with, replaced, or altered in any material respect." *Id.* art. 64.03(a)(1)(A)(ii). The State attached excerpts from the trial testimonies of John Crenshaw, a Bryan Police Department officer who was present when the items at issue were recovered; and Richard Crum, an FBI agent who examined the gun. Crenshaw testified that, as soon as the gun was retrieved from the river, it was placed in a water-filled plastic jar in order to prevent rusting. Crenshaw later brought the jar to Crum, who removed and emptied the gun, and "immediately started oiling it down." Crum testified

3

he immersed the weapon in a gun-cleaning solvent, cleaned its surfaces, and test-fired it. Additionally, Crenshaw testified that the tennis shoes tested negative for the presence of blood.

The State also attached to its response an affidavit by Bill Turner, the former Brazos County District Attorney and the lead prosecutor in appellant's trial, stating in part:

> I tried numerous murder cases during my time in office as the District Attorney. Early in my career, a pathologist told me that dried blood posed no hazard. So my practice, while preparing for trial and during trial, was to handle evidence without wearing any gloves. I did not discontinue the practice of handling evidence without wearing gloves until 2010, when I tried the murder case in the State of Texas v. Danny Grammer, cause no. 09-01820-CRF-361. During the Grammer jury trial, I was handling bloody evidence without gloves while questioning a DPS lab technician; a DPS supervisor present to watch the testimony commented that I should put gloves on because it was making her sick. I complied with her request and changed how I routinely handled evidence.
>
> I am confident that I did not wear gloves while handling the evidence in the Marlin Wayne Webb case, including the tennis shoes and the murder weapon that are the subject of the DNA motion. It is also possible that defense counsel also touched the tennis shoes and the murder weapon when examining the evidence, either while preparing for trial or during trial. Finally, it is also possible that the jury examined the evidence during their deliberations.

Without holding a hearing, the trial court denied appellant's motion for DNA testing on November 29, 2017. The order contained findings of fact and conclusions of law, including the following:

> The Court finds that Bill Turner, during preparation for trial and during trial, touched both items without wearing gloves.
>
> . . . .
>
> The Court finds the tennis shoes are in a torn, open paper bag and are comingled with the other evidence in a single evidence box.
>
> . . . .
>
> The Court finds that the tennis shoes and .38 caliber revolver have not been

4

subjected to a chain of custody for purposes of DNA testing sufficient to establish that both items have not been substituted, tampered with, replaced, or altered in any material respect.

. . . .

The Court finds that, based on the tennis shoes and .38 caliber revolver having not been subjected to a chain of custody for purposes of DNA testing sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect, Applicant fails to show by a preponderance of the evidence that a reasonable probability exists that Applicant would not have been convicted if exculpatory results had been obtained through DNA testing.

This appeal followed. *See id.* art. 64.05.

## II. DISCUSSION

### A. Motion for DNA Testing

Appellant argues by his first issue that the trial court reversibly erred as a matter of law by failing to order DNA testing of the tennis shoes and gun.

#### 1. Applicable Law and Standard of Review

Under chapter 64, a convicted person may file a motion with the convicting court for forensic DNA testing of evidence "that was secured in relation to the offense that is the basis of the challenged conviction" and that "has a reasonable likelihood of containing biological material." *Id.* arts. 64.01(a-1), (b), 64.03(a)(1)(B). The motion must show that the evidence was in the possession of the State during trial, is currently in the possession of the State, and either was not previously subjected to DNA testing or was previously subjected to testing but "can be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test." *Id.* art. 64.01(a)(1), (b). The court may order testing under chapter 64 only if it finds that: (1) the evidence "still exists," "is in a condition making DNA testing possible," and "has been subjected to a chain of custody sufficient to establish

5

that it has not been substituted, tampered with, replaced, or altered in any material respect"; (2) there is a "reasonable likelihood that the evidence contains biological material suitable for DNA testing"; (3) "identity was or is an issue" in the underlying case; (4) the movant established by a preponderance of the evidence that he or she would not have been convicted if exculpatory results had been obtained through DNA testing; and (5) the movant established by a preponderance of the evidence that the request for testing is not made to unreasonably delay the execution of sentence or administration of justice. *Id.* art. 64.03(a)(1)(A)–(C), (a)(2)(A), (a)(2)(B); *Ex parte Gutierrez*, 337 S.W.3d 883, 889–90 (Tex. Crim. App. 2011).

In reviewing a trial court's rulings under chapter 64, we use a bifurcated standard of review, affording "almost total deference" to findings of historical fact and application-of-law-to-fact issues that turn on witness credibility and demeanor, but considering de novo all other application-of-law-to-fact questions. *Ex parte Gutierrez*, 337 S.W.3d at 890.

### 2. Analysis

The Texas Court of Criminal Appeals' recent decision in *Reed v. State* is instructive. *See* 541 S.W.3d 759, 762 (Tex. Crim. App. 2017), *cert. denied*, 138 S. Ct. 2675 (2018). In that case, the Court affirmed the trial court's denial of post-conviction DNA testing based on the movant's failure to show by a preponderance of the evidence that (1) exculpatory results on any of the items he sought to have tested would have resulted in his acquittal, or (2) his motion was not made for the purpose of unreasonable delay. 541 S.W.3d at 773–80 (applying TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(2)(A), (a)(2)(B)). The *Reed* Court also found that the evidence supported the trial court's

determination that some of the items sought to be tested were "contaminated, tampered with, or altered." *Id.* at 769–70 (applying TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(1)(A)(ii)).

Although DNA testing had been done on some items and the results of those tests were in evidence at trial, the appellant in *Reed* argued that new DNA testing techniques could reveal the presence of "touch DNA," the existence of which is based on the concept that "when a person touches something[,] the person's epithelial, or skin, cells transfer to that object and then may be subjected to DNA analysis." *Id.* at 765. At a hearing on Reed's chapter 64 motion, an investigator with the Office of the Attorney General testified that he located many of the items sought for testing in "two unsealed boxes" in the Bastrop County Clerk's Office, and he took photos of the items in the boxes. *Id.* at 767. The photos showed that, aside from one bagged item, the pieces of evidence were "simply placed in the box" and were "not separated into individual bags"—rather, the items "are distinctly commingled and touching one another." *Id.* A Bastrop County Deputy Clerk testified that several documents entered into evidence at appellant's trial were "not individually wrapped" but instead were stored together in a single manila envelope. *Id.* And the lead prosecutor at Reed's trial testified that many people—including herself, the defense attorneys, court personnel, the court reporter, the district clerk, and potentially the jurors—handled the evidence at trial without gloves. *Id.*

Reed presented two witnesses—a former detective and crime scene expert, and an associate DNA laboratory director—who each testified that the fact that several items were commingled together in a box would not make that evidence unsuitable for testing. *Id.* at 766. The trial court credited this testimony, but it nevertheless found that the

7

evidence at issue was not "subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(1)(A)(ii)). The court of criminal appeals found that the evidence supported this finding, noting that "[t]he cumulative weight of the State's and Reed's witnesses demonstrates that the manner in which the evidence was handled and stored casts doubt on the evidence's integrity, especially for the specific testing Reed seeks." *Id.* at 770.

Appellant argues that *Reed* is distinguishable from his case principally due to the nature of the photos of the stored evidence. He contends that, unlike in *Reed*, the photos of the evidence box in this case show that the items were not "commingled" together but were rather contained in "separate packaging," thereby "eliminat[ing], or significantly reduc[ing], the risk of contamination from the method of storage." Appellant also notes that, unlike in *Reed*, the State offered no expert affidavit "concerning contamination or tampering resulting from the storage of the tennis shoes with separately packaged items"; whereas his expert averred that the shoes may still potentially contain DNA.

We conclude that the trial court's findings are supported by the record. Testimony from the 1990 trial established that the gun was oiled down, immersed in a gun-cleaning solvent, cleaned, and test-fired, soon after police had recovered it from a riverbed where it had laid submerged for 138 days after the murder. Additionally, Turner's affidavit established that, as in *Reed*, many people handled the gun without gloves at trial. These pieces of evidence support the trial court's finding that the gun has not "been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with,

8

replaced, or altered in any material respect." *See* TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(1)(A)(ii); *Reed*, 541 S.W.3d at 770.

As to the tennis shoes, appellant argues that "[a]ll the items photographed in the evidence box are self-contained in their own packaging" and that "the open bag in which the tennis shoes were packaged demonstrates definitively the tennis shoes, and particularly the tips of the tennis shoes, are inside the packaging."

We disagree. The photos depict several items in the evidence box, but not all of them are separately packaged.[5] And while the photos clearly show that the paper bag containing the tennis shoes is torn open, they do not clearly show that the "tips" of the shoes are "inside" the packaging or that any part of the shoes would be protected from contamination. Instead, the evidence showed that the shoes were submerged underwater for 138 days; stored in a torn, open paper bag; commingled with at least some other pieces of evidence in the box that were not individually packaged; and handled without gloves by many people at trial. Further, it is noteworthy that the shoes tested negative for the presence of blood prior to trial. Although newer testing techniques may reveal the presence of "touch DNA" even where there is no blood, *Reed* demonstrates that the ungloved handling of the evidence by many people is indicative of contamination that would "cast[] doubt on the evidence's integrity" for purposes of this kind of testing. *Reed*, 541 S.W.3d at 770. This evidence, taken together, supports the trial court's finding that the tennis shoes have not "been subjected to a chain of custody sufficient to establish that [they have] not been substituted, tampered with, replaced, or altered in any material

---

[5] For example, the jar initially used to store the gun is not individually packaged.

9

respect." *See* TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(1)(A)(ii); *Reed*, 541 S.W.3d at 770.

Appellant's first issue is overruled.

## B.      Request for Abatement

Appellant argues by his second issue that, by ruling on his motion a mere seven business days after the State filed its response, the trial court "effectively prevented [him] from responding to the affidavits" included in State's response.  Appellant asks us to abate the appeal, remand the case, and direct the trial court "to allow responsive affidavits and make additional findings and conclusions based on Appellant's response."  We decline to do so.  As appellant recognizes, a trial court is not required to hold an evidentiary hearing in determining a motion for DNA testing under chapter 64.  *Ex parte Gutierrez*, 337 S.W.3d at 893; *Rivera v. State*, 89 S.W.3d 55, 58 (Tex. Crim. App. 2002).  The trial court may even rule on a chapter 64 motion without receiving a response from the State.  *Whitaker v. State*, 160 S.W.3d 5, 9 (Tex. Crim. App. 2004).  Aside from case law showing that a hearing is not required, appellant cites no authority, and we find none, showing that he is entitled to reply to the State's response to a chapter 64 motion, nor that he is entitled to any particular amount of time in which to do so.  *See* TEX. R. APP. P. 38.1(i).  Further, appellant does not explain what any "responsive affidavits" would have shown or whether their exclusion affected his substantial rights.  *See id.*; TEX. R. APP. P. 44.2(b) (standard for reversible error).  Appellant's second issue is overruled.

## C.      Constitutional Ramifications of *Reed v. State*

Finally, appellant contends by his third issue that the "statutory construction of article 64.03(a)(1)(A)(ii) necessitated by the sufficiency of the evidence ruling in *Reed*"

violates due process under the United States and Texas Constitutions. Appellant argues that, because it applied "evidentiary sufficiency standards of review," *Reed* "necessitates" a construction of article 64.03(a)(1)(A)(ii) which violates his right to due process. More specifically, appellant argues that the *Reed* Court "engrafted a non-existent statutory element—evidence of lack of contamination—on the authentication requirements" of article 64.03(a)(1)(A)(ii) and that this ruling "imposes impossible hurdles for post-conviction DNA testing under Chapter 64."[6] Appellant further contends, without reference to authority, that "[t]o comport with State and Federal due process requirements of consistency and non-illusory protections, Chapter 64's authenticity requirement must be construed and applied consistently with well-settled standards governing authenticity and chain of custody" in trial settings.

The State argues that appellant waived his due process complaint because he did not raise it before the trial court. We agree. *See* TEX. R. APP. P. 33.1(a); *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008) (noting that "even constitutional error . . . may be forfeited if the appellant failed to object" in the trial court). We observe, in any event, that the *Reed* Court did not apply an evidentiary-sufficiency standard of review in determining whether the trial court erred in denying the motion for DNA testing; rather, it applied the bifurcated standard set forth above. *Reed*, 541 S.W.3d at 768–69 (citing *Guzman v. State*, 955 S.W.2d 85,89 (Tex. Crim. App. 1997)).

We overrule appellant's third issue.

---

[6] Appellant acknowledges that similar constitutional arguments were made by Reed in a motion for rehearing before the Texas Court of Criminal Appeals and in a petition for writ of certiorari before the United States Supreme Court, both of which were denied without an opinion.

11

## III. Conclusion

The trial court's judgment is affirmed.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
11th day of April, 2019.