**AFFIRMED and Opinion Filed November 14, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-00281-CR

### CARLOS MARIO DELAROSA, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416-80340-2011**

## MEMORANDUM OPINION
Before Justices Bridges, Francis, and Lang-Miers
Opinion by Justice Bridges

A jury convicted appellant Carlos Mario Delarosa of two counts of aggravated assault/family violence and one count of aggravated assault. He was sentenced to life in prison on the aggravated assault/family violence counts and twenty years' imprisonment on the remaining count. Appellant appealed his convictions and we affirmed. *See Delarosa v. State*, No. 05-11-00312-CR, 2013 WL 1838643, at *1 (Tex. App.—Dallas Mar. 26, 2013, no pet.) (mem. op., not designated for publication).

Appellant filed a post-conviction motion for DNA testing on November 20, 2017. The trial court denied his motion finding identity was and is not an issue and appellant failed to establish by a preponderance of the evidence the he would not have been convicted if exculpatory results of the testing had been available. We affirm.

## Background

On the evening of April 24, 2009, appellant and his wife, Serena Delarosa, went out to enjoy an evening with her brother, Robert Enriquez, and his girlfriend, Stacy Guardado. Between the two couples, they had thirteen children they left at appellant's home under the supervision of Serena's oldest son, fifteen-year-old Jose Munoz. The children ranged in age from fifteen to one. Serena was also seven months pregnant at the time.

The couples went to a comedy club in Addison and began drinking. After the show, they went to another bar and had more drinks. Serena testified everyone was having fun and there was no tension or fighting. They arrived back home after midnight. Robert and Stacy went to bed, but appellant and Serena stayed up and had another drink.

Jose had invited a friend over named Mikey and asked if he could spend the night. Serena agreed, but appellant did not want him there. Appellant and Serena often argued over whether the children could invite friends over and this night was no different. Serena told appellant to get his guns and drugs and get "out of here." Appellant refused. Serena and the two boys went outside to leave. Appellant would not let them go so Serena went back inside. The boys remained outside, but appellant went back to the house.

According to Jasmine, one of Serena's daughters, appellant walked into the bedroom where she had been sleeping, pulled a gun from the dresser drawer, and went back to the hallway.

Serena was walking down the hallway towards the room where Robert and Stacy were sleeping because she hoped Robert could get appellant to calm down. The next thing she remembered was hearing "a bing, really, really loud" and sliding down the floor.

Jose heard three loud banging sounds while outside the house and ran back inside. He saw Serena lying on the floor and appellant standing over her with a gun in his hand. Appellant then pointed the gun at Jose. Fearing for his own life, Jose ran back to the alley and hid with Mikey.

The gunshots woke up Robert. When he sat up, he saw appellant standing in the room with a gun. Robert saw Serena in the hallway coughing and bleeding from the mouth. Appellant shot Stacy and then told Robert not to move. He said he would shoot Stacy again and kill the baby sleeping next to them if he moved. Appellant fired another shot and it hit Robert. At the time, Robert did not realize he had been shot. Instead, he held onto Stacy and pretended to be dead until appellant left. When Robert eventually got up, he noticed muscle weakness in his leg and then realized he had been shot.

Joshua, another one of Serena's children, looked outside and saw appellant with a gun in his right hand. Then appellant got into his Ford Excursion and drove away.

Jose, who was still hiding from appellant, called 9-1-1. Jose could tell appellant slowed down looking for the boys but drove off when they heard police sirens. Jose and Mikey continued running to Mikey's house. Jose told the 9-1-1 operator appellant shot his mother.

Officer Bradley Hutton spotted the Excursion and began pursuit. When Officer Hutton activated his lights and siren, appellant accelerated. Shortly thereafter, the Excursion lost control, hit a light pole, and flipped onto the driver's side. The engine compartment then burst into flames, and officers pulled appellant from the burning car. Appellant did not have the gun on him at that time, and the gun's location was unclear. Appellant claimed he threw it out the window in the alley.

The gun was later recovered from inside the car after the fire was extinguished. The grips had melted into the mechanism, and the gun had to be refurbished before it could be tested.

Despite suffering life-threatening injuries, all three victims survived. When they testified at trial, the jury learned they all had past issues with drugs. In fact, officers found over a kilo of cocaine locked in the garage during a search and other drug paraphernalia indicating drug dealing was occurring out of the house. Serena and Robert's family had ties to a gang in California, and Robert had been in and out of prison so many times he lost count. During trial, the defense's strategy was to challenge the credibility of the witnesses by focusing on their drug use, past gang affiliation, and incentives to lie because they wanted appellant to get life in prison. However, the jury also heard from the victims, who identified appellant as the shooter, and from some of the children who identified appellant as the man holding the gun. The jury convicted appellant of two counts of aggravated assault/family violence and one count of aggravated assault.

Appellant filed a post-conviction motion for DNA testing, which the trial court denied. This appeal followed.

**Standard of Review and Applicable Law**

Chapter 64 of the Code of Criminal Procedure governs a convicted person's request for post-conviction forensic DNA testing and contains multiple threshold requirements that must be met before an applicant is entitled to such testing. *See* TEX. CODE CRIM. PROC. ANN. arts. 64.01–64.05. The convicted person bears the burden of satisfying all article 64.01 and 64.03 requirements. *Wilson v. State*, 185 S.W.3d 481, 484 (Tex. Crim. App. 2006).

The purpose of post-conviction DNA testing is to provide a means through which a convicted person may establish his innocence by excluding himself as the perpetrator of the offense of which he was convicted. *See Blacklock v. State*, 235 S.W.3d 231, 232–33 (Tex. Crim. App. 2007). A convicting court may order forensic DNA testing only if the statutory preconditions of Chapter 64 are met. *See Holberg v. State*, 425 S.W.3d 282, 284 (Tex. Crim. App. 2014). Several requirements must be met but only two requirements are relevant to this case: (1) identity was or

is an issue and (2) appellant established by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing. *See* TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(1)(C), (a)(2)(A). A movant has not met his burden of section 64.03 (a)(2)(A) if exculpatory results would "merely muddy the waters." *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002).

Generally, we review a trial court's decision on a motion related to DNA testing under a bifurcated standard of review. *Whitaker v. State*, 160 S.W.3d 5, 8 (Tex. Crim. App. 2004). We afford almost total deference to the trial court's determination of issues of historical fact and issues of application of law to fact that turn on credibility and demeanor of witnesses. *Rivera*, 89 S.W.3d at 59. We review de novo other issues of application-of-law-to-fact questions that do not turn on the credibility and demeanor of witnesses. *Id*. Here, because the trial court did not conduct a live hearing, we review the trial court's denial of DNA testing de novo. *See Smith v. State*, 165 S.W.3d 361, 363 (Tex. Crim. App. 2005).

**Discussion**

Appellant requested post-conviction DNA testing on five items: (1) swabs from three spent shell casings from the home; (2) a black nylon gun case found inside the top cabinet of the wet bar from the home; (3) unspent bullets found in the black nylon gun case; (4) a 9-mm handgun located in the Ford Excursion; and (5) unspent bullets from the 9-mm handgun.

In order to be entitled to DNA testing, appellant must show that he, more likely than not, would not have been convicted with exculpatory results. *State v. Swearingen*, 424 S.W.3d 32, 38 (Tex. Crim. App. 2014). "Exculpatory results" has been held to mean only results "excluding [the convicted person] as the donor of this material . . . ." *Id*. (quoting *Blacklock*, 235 S.W.3d at 232).

We agree with the State that the absence of appellant's DNA on any of the five categories of items would not serve to exculpate him of the crime. *See, e.g., Rivera*, 89 S.W.3d at 55, 60

–5–

(absence of DNA does not indicate innocence when such evidence may not have ever existed or could have been washed away). Further, the presence of an unknown person's DNA would not establish that appellant, more likely than not, would not have been convicted by the jury. Such evidence, without information about how or when the DNA was deposited on the items, would only prove that some unknown person, at some unknown time, touched the gun, the bullets, and the gun case. This is not enough to warrant DNA testing under article 64.03. *See, e.g.*, *Swearingen*, 424 S.W.3d at 38 (concluding presence of another DNA donor in fingernail scrapings would not overcome "mountain of evidence" of appellee's guilt because the victim having encountered another person would not factually exclude appellee as killer); *see Fothergill v. State*, No. 05-15-00862-CR, 2016 WL 1435658, at *3 (Tex. App.—Dallas Apr. 11, 2016, pet. ref'd) (mem. op., not designated for publication) ("[T]he presence of a third person's DNA at a crime scene would not exclude appellant as the attacker because the evidence would not show how or when that DNA came to be at the crime scene."); *Goodrich v. State*, No. 09-14-00027-CR, 2015 WL 1247355, at *4 (Tex. App.—Beaumont Mar. 18, 2015, no pet.) (mem. op., not designated for publication) (concluding DNA testing would not determine the identity of who committed murder or exculpate defendant when it was unknown when prints were left on car).

Moreover, regardless of whose DNA may have been on the gun, the bullets, or the gun case, other evidence at trial established appellant's guilt, which included testimony from Jose, Jasmine, and Joshua. *See, e.g., Whitaker*, 160 S.W.3d at 9 ("Regardless of whose blood is on the rifle, other evidence at trial established [appellant's] guilt, including his statement that he killed the victim."). Appellant did not challenge the credibility of Jasmine and Joshua. He attempted to discredit Jose by pointing out discrepancies in his written report to police and his testimony at trial. However, the discrepancies involved lying about drinking on the night of the shooting and not confusion over seeing appellant with a gun.

To the extent appellant argues the absence of his DNA on any of the items would leave the State "standing on the credibility of failing memories and known gang members," attacks on credibility are not valid reasons for DNA testing. *See Bates v. State*, 177 S.W.3d 451, 454 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd); *see also Cloud v. State*, No. 05-13-01235-CR, 2014 WL 1413818, at *2 (Tex. App.—Dallas Mar. 26, 2014, pet. ref'd) (mem. op., not designated for publication) (numerous alleged fabrications or inconsistencies by complainants were not valid reasons for DNA testing).

Appellant has not shown by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing. Accordingly, based on the record before us, we conclude the trial court did not err by denying his motion for DNA testing. We overrule appellant's second issue. We need not consider whether identity was and is an issue in this case. *See* TEX. R. APP. P. 47.1.

## Conclusion

The trial court's order denying DNA testing is affirmed.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
180281F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

CARLOS MARIO DELAROSA, Appellant

No. 05-18-00281-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District Court, Collin County, Texas
Trial Court Cause No. 416-80340-2011.
Opinion delivered by Justice Bridges.
Justices Francis and Lang-Miers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered November 14, 2018.