# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00282-CR

---

## In re Tom Robertson, Sr.

---

### FROM THE 51ST DISTRICT COURT OF TOM GREEN COUNTY
### NO. A-05-0549-S, THE HONORABLE THOMAS J. GOSSETT, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellant Tom Robertson, Sr. appeals the trial court's order denying his motion for postconviction forensic DNA testing under Chapter 64 of the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. arts. 64.01(a-1), 64.03.  We will affirm.

## BACKGROUND

In 2006, a jury found appellant guilty of sexual assault of a child, *see* Tex. Penal Code § 22.011(a)(2), and sentenced him to twenty years' imprisonment, *see id.* § 12.33. His conviction was affirmed by the Thirteenth Court of Appeals.[1]  *See Robertson v. State*, No. 13-06-00315-CR, 2007 WL 2417371, at *1 (Tex. App.—Corpus Christi–Edinburg Aug. 28, 2007, pet. ref'd) (mem. op., not designated for publication).  The following factual background of appellant's case was set forth by our sister court:

---

[1]  The Supreme Court of Texas transferred the direct appeal from this Court to the Thirteenth Court of Appeals pursuant to its docket equalization authority.  *See* Misc. Docket No. 06-9063 (Tex. May 30, 2006); *see also* Tex. Gov't Code § 73.001 (authorizing transfer of cases between courts of appeals).

Appellant and his two sons, Tom Elton Robertson II and Sam Robertson, were separately indicted for sexual assault of the same child, J.J. According to J.J., she had been sexually assaulted by all three men at various and separate times beginning when she was fourteen years old. These alleged sexual assaults occurred while J.J.'s mother was dating appellant. When she was fifteen years old, J.J. became pregnant. DNA analysis showed that Tom Elton Robertson II is the father of J.J.'s baby.

*Id.* Appellant and one of his sons, Tom Elton Robertson II, agreed to a joint trial.

During the joint trial, the State presented eleven witnesses, including J.J., and numerous exhibits, including photographs, recorded phone calls, and blood samples. Neither appellant [n]or Robertson II testified. After the close of the evidence, the jury returned a guilty verdict for both defendants and sentenced them both to twenty years in prison.

*Id.*

In 2009, appellant filed two separate *pro se* requests for the appointment of counsel to assist him in seeking postconviction forensic DNA testing, which were both denied. *See* Tex. Code Crim. Proc. art. 64.01(c). In 2018, he filed a third *pro se* request for appointed counsel, which was also denied. *See id.* Appellant attempted to appeal the trial court's order denying his third request for appointed counsel; this Court dismissed the appeal for want of jurisdiction. *See Ex parte Robertson*, No. 03-18-00103-CR, 2018 WL 2074653, at *1 (Tex. App.—Austin May 4, 2018, no pet.) (mem. op., not designated for publication); *see also Whitfield v. State*, 430 S.W.3d 405, 408 n.11 (Tex. Crim. App. 2014) (explaining that "a judge's refusal to appoint counsel for post-conviction DNA testing is not an immediately 'appealable order' under 64.05 because it is a preliminary decision that is appropriately reviewed as alleged error after a motion for DNA testing is denied" (citing *Gutierrez v. State*, 307 S.W.3d 318, 323 (Tex. Crim. App. 2010))).

2

Appellant then filed a *pro se* motion seeking postconviction forensic DNA testing. *See* Tex. Code Crim. Proc. art. 64.01(a-1). The trial court ordered a response from the State, *see id.* art. 64.02(a)(2) (requiring attorney representing State to either "deliver the evidence to the court, along with a description of the condition of the evidence," or "explain in writing to the court why the state cannot deliver the evidence to the court"), and the State filed a response, which attached as exhibits a list of evidence maintained by the police department and a list of evidence admitted at trial, and a supplemental response, which attached as exhibits a DPS crime lab report concerning the submitted evidence items tested in the case and an affidavit of the evidence custodian from the police department.

After reviewing appellant's motion and the evidence in the custody of the district clerk and the State, the trial court entered an order denying appellant's motion, making findings as to appellant's motion and the evidence that he sought to have tested.[2] Regarding appellant's motion, the trial court found that:

1. Movant, Tom Robertson, Sr., filed what appears to be a "form motion" containing numerous blank lines to be filled in by Movant.

2. Movant requests forensic DNA testing of the following listed items "containing biological material": "Syringes, Hair, condoms, Spermicide Applicators, Mattress Cavers (sic), Seat Covers, Flooring or, Tissues, Swabs, QTips, Foam[."]

---

[2] Ten days before signing the order, the trial court mailed a letter to appellant with a copy of the State's supplemental response. In the letter, the court explained "the legal process of applying for post-conviction DNA testing," which included setting forth the applicable statutory provisions and relevant standards expressed in case law. The trial judge then informed appellant, "After reviewing your application, and the evidence remaining in custody, I have found that the application and evidence do not satisfy the requirements of Chapter 64," and conveyed the court's intention to deny appellant's motion due to the failure to satisfy the requirements set out in articles 64.01 and 64.03.

3.    The motion for DNA testing fails to allege facts that would show, by a preponderance of the evidence, the requirements of Art. 64.03, Texas Code of Criminal Procedure.

. . .

5.    The motion further does not allege facts that would establish by a preponderance of the evidence that movant would not have been convicted if exculpatory results had been obtained through DNA testing, and that the request for testing is not made to unreasonably delay the execution of sentence or administration of justice.

Concerning the evidence in the possession of the district clerk, the trial court found that:

1.    Evidence admitted during Movant's trial has been in the possession of the Tom Green County District Clerk since the Mandate was issued in this case.

2.    The evidence consists of thirty-five (35) items. There are no syringes, hair, condoms, spermicide applicator, mattress covers, seat covers, flooring, tissues, Qtips, or foam. Only one (1) item requested to be tested by movant would possibly be in the clerk's possession. This is a "swab DNA sample [K.J.]". [K.J.] was born to the victim, [J.J.]. There is a blood sample of [J.J.]. A search warrant authorized the drawing of blood from Movant, and his son, Tom Robertson, Jr., a co-defendant. Tom Robertson Jr. was shown to be the biological father of the infant. Movant further, does not seek testing of the blood samples.

3.    The evidence in the possession of the clerk is in an open cardboard box. It appears to have [been] a box used for evidentiary purposes by the court reporter to store various items during the appeal.

4.    Even assuming that there was evidence in the possession of the clerk, corresponding with that requested by Movant, the evidence has not been subjected to a chain of custody since the trial to establish confidence that it has not been substituted, tampered with, replaced, altered or remained uncontaminated to allow for testing.

With regard to evidence "in the possession of the State," the trial court found:

4

1.    The Texas Department of Public Safety shows to have been in the possession of three (3) items relevant to Movant's motion: upholstery from the vehicle of Tom Robertson (seat covers), yellow mattress sample (mattress), and blue mattress sample (mattress).

2.    Testimony from Diane Wilson, during the trial of Movant, revealed that no DNA testing was done by the Department of Public Safety because the items were so covered with stains that testing was ruled out as being able to reveal anything probative.[3] Movant, co-defendant Tom Robertson Jr., the victim[,] and numerous other persons apparently stayed at the house during a period of time preceding the seizing of evidence. DNA would have been expected to be on the mattresses and sheets.

Based on these findings, the trial court denied appellant's motion.[4]

## DISCUSSION

Appellant raises two points of error on appeal. In his first point of error, he argues that the trial court erred in denying his motion for DNA testing because he satisfied the requisites of the statute. In his second point of error, he maintains that the trial court "unconstitutionally applied" Chapter 64 to "his situation."

## DNA Testing

We review a trial court's decision to deny a motion for postconviction DNA testing under a bifurcated standard of review. *Reed v. State*, 541 S.W.3d 759, 768 (Tex. Crim. App. 2017); *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002). Under this standard, we afford almost total deference to a trial court's determination of issues of historical fact and its

---

[3] Specifically, the trial testimony concerning the mattresses and sheets was that they were "so covered with various stains and secretions and, in fact, layered stains on this — on these covers" that the lab personnel "didn't feel like that — that that they could do an adequate and effective test on these mattress covers."

[4] In the order denying testing, the court "also decline[d] to appoint counsel for Movant." Appellant does not complain about the denial of his request for appointed counsel.

5

application of the law to fact issues that turn on determinations of witnesses' credibility and demeanor, but we review de novo the trial court's application of the law to fact issues that do not turn on determinations of witnesses' credibility and demeanor. *Reed*, 541 S.W.3d at 768–69; *Holberg v. State*, 425 S.W.3d 282, 284–85 (Tex. Crim. App. 2014). However, where, as here, the trial record and affidavit of appellant are the only sources of information supporting the motion, the trial court is in no better position than we are to make its decision, and we review the issues de novo. *See Smith v. State*, 165 S.W.3d 361, 363 (Tex. Crim. App. 2005) (because trial court did not hold live hearing on request for DNA testing, reviewing court conducted de novo review as trial court was in no better position to determine issues).

In his motion for DNA testing, appellant requested that forensic DNA testing be conducted "on the following evidence containing biological material, NAMELY[,] Syringes, Hair, condoms, Spermicide Applicators, Mattress C[o]vers, Seat Covers, Flooring or Tissues, Swabs, Q-Tips, Foam." In an "affidavit" attached to his motion,[5] appellant appears to recount trial testimony from the child victim that described an incident in which appellant had sexual

---

[5] A motion for forensic DNA testing must be accompanied by "an affidavit, sworn to by the convicted person, containing statements of fact in support of the motion." *See* Tex. Code Crim. Proc. art. 64.01(a-1); *see Dunning v. State*, 572 S.W.3d 685, 697 (Tex. Crim. App. 2019) (explaining that defendant "must include an affidavit" when filing motion to obtain DNA testing). Although appellant's motion is not accompanied by the required sworn-to affidavit, it contains an affidavit with an "inmate's declaration" in which appellant swears "under penalty of perjury" that the facts contained in the affidavit are "true and correct." This Court has previously held that similar verification was sufficient to satisfy the affidavit requirement. *See In re Fain*, 83 S.W.3d 885, 889 n.4 (Tex. App.—Austin 2002, no pet.); *see also* Tex. Civ. Prac. & Rem. Code § 132.001(a) (allowing "unsworn declaration" to be used in lieu of affidavit). Although appellant's declaration does not include his date of birth, we conclude that it nevertheless substantially complies with the statutorily prescribed declaration form. *See* Tex. Civ. Prac. & Rem. Code § 132.001(e) (setting out prescribed declaration form for inmate); *see also Bahm v. State*, 219 S.W.3d 391, 393 (Tex. Crim. App. 2007) (explaining that requirements of "unsworn declaration" "are simply that the unsworn declaration must be (1) written and (2) 'subscribed by the person making the declaration as true under penalty of perjury'" and clarifying that only substantial compliance with prescribed form in statute is necessary).

6

intercourse with her in his truck after he put a syringe or spermicide applicator "up in" her and "the foam squirted into the victim's vagina."**6** Appellant avers in his unsworn declaration that "[t]he testing of the list of evidence in this Affidavit; if it returns any useable DNA, will show that none of [his] DNA is on the evidence, and that the evidence would show [his] innocence."

Under Chapter 64 of the Code of Criminal Procedure, "[a] convicted person may submit to the convicting court a motion for forensic DNA testing of evidence that has a reasonable likelihood of containing biological material." Tex. Code Crim. Proc. art. 64.01(a-1). Several requirements must be met in order to obtain DNA testing under Chapter 64, and the convicting court may order forensic DNA testing only if the statutory preconditions are met. *See id.* arts. 64.01, 64.03; *see also Hall v. State*, 569 S.W.3d 646, 655 (Tex. Crim. App. 2019) (confirming that to be entitled to postconviction DNA testing, "a convicted person must satisfy the requirements of Chapter 64 of the Code of Criminal Procedure"). To meet the burden of the Chapter 64 requirements, the convicted person must provide statements of fact in support of his claims; general, conclusory statements are insufficient. *See Routier v. State*, 273 S.W.3d 241, 255 (Tex. Crim. App. 2008); *Dinkins v. State*, 84 S.W.3d 639, 642 (Tex. Crim. App. 2002); *see also Swearingen v. State*, 303 S.W.3d 728, 732 (Tex. Crim. App. 2010) (stating that "a mere assertion or a general claim" will not satisfy Chapter 64 burden).

Under Chapter 64, the convicting court may order DNA testing only if the court finds that:

1.      the evidence "still exists and is in a condition making DNA testing possible;"

---

**6** In her trial testimony, J.J. described incidents of appellant's sexual abuse of her that occurred in appellant's bedroom, on the floor of his bedroom, in Sam's bedroom, and in appellant's truck. She said that appellant used the same methods of birth control (the foam spermicide and a condom) every time.

2.      the evidence "has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect;"

3.      "there is a reasonable likelihood that the evidence contains biological material suitable for DNA testing; and"

4.      "identity was or is an issue in the case[.]"

Tex. Code Crim. Proc. art. 64.03(a)(1); *see Ex parte Gutierrez*, 337 S.W.3d 883, 889, 891 (Tex. Crim. App. 2011); *see also Whitaker v. State*, 160 S.W.3d 5, 8 (Tex. Crim. App. 2004) (noting findings that trial court must make before it may order DNA testing). In addition, the convicted person must establish by a preponderance of the evidence that:

1.      he "would not have been convicted if exculpatory results had been obtained through DNA testing; and"

2.      "the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice."

Tex. Code Crim. Proc. art. 64.03(a)(2). The record demonstrates that appellant failed to meet the statutory requirements of Chapter 64 for obtaining postconviction DNA testing.

First, in his motion, appellant did not explain whether the evidence sought to be tested still exists and is in a condition capable of being tested.[7] The affidavit of the evidence custodian of the police department, which was attached to the State's supplemental response, indicates that several items that appellant sought to have tested did not "still exist" or never did

_____

[7] We also note that, in his motion, appellant lists items of evidence generally without any specific identifying information, simply asserting that "[t]his evidence was secured in relation to the Offen[s]e of Sexual Assault of a Child." For example, he asks for "hair" to be tested, but fails to identify whose hair or when or where such evidence was purported to have been collected. *See Jones v. State*, 161 S.W.3d 685, 688 (Tex. App.—Fort Worth 2005, pet. ref'd) ("To meet the requirements of article 64.01, an appellant must clearly state, at a minimum, what evidence he wants tested." (citing *Dinkins v. State*, 84 S.W.3d 639, 642 (Tex. Crim. App. 2002)).

exist for purposes of the statute because no such items were collected during the investigation of appellant's case.[8] The custodian stated that he found "no record" of hair, spermicide applicators, flooring or tissues, swabs, Q-tips, or foam "being submitted to the evidence section in relation to this case."

In addition, the custodian stated that he was "unable to locate" a Ziploc bag containing disposable plastic syringes with disposable needles, which was seized pursuant to a search warrant and was submitted to the evidence storage at the police department. He explained that, while he did not have a record of the release or destruction of this item, the lockbox that the item was originally found in was released to an individual at appellant's request, and the Ziploc bag may have been released with the lockbox. The custodian also indicated that he was "unable to locate" "condom packages" (not "condoms" as appellant referenced in his motion), which had been seized pursuant to a search warrant and were submitted to the evidence storage at the police department, although the evidence custodian found no record of the release or destruction of these items.

"Affidavit testimony from a relevant witness that no biological evidence from the case is maintained or possessed is sufficient, absent any contrary evidence, to support denial of a motion for forensic DNA testing." *Lewis v. State*, 191 S.W.3d 225, 228 (Tex. App.—San Antonio 2005, pet. ref'd); *accord In re Fletcher*, No. 03-19-00044-CR, 2020 WL 742383, at *3 (Tex. App.—Austin Feb. 14, 2020, no pet.) (mem. op., not designated for publication); *see, e.g.*, *Caddie v. State*, 176 S.W.3d 286, 290 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd)

---

[8] Under article 64.01, the motion "may request forensic DNA testing only of evidence described by Subsection (a-1) that was secured in relation to the offense that is the basis of the challenged conviction and was in the possession of the state during the trial of the offense[.]" Tex. Code Crim. Proc. art. 64.01(b).

(concluding that trial court's finding that movant failed to show that DNA evidence "still exists and is in a condition making DNA testing possible" was supported by record when State averred that no testable DNA evidence existed and submitted affidavits of records custodians of district clerk, police-department crime lab, and police-department property room). Appellant did not offer any evidence contradicting the affidavit evidence presented by the State that these items of evidence did not "still exist" or did not exist at all. *See Gutierrez*, 337 S.W.3d 891 (observing that courts have found that reasonable grounds are not present if no evidence exists or if it has been destroyed).

Assuming, as the trial court did, that appellant's request for the testing of "swabs" referred to DNA swabs admitted at trial and in the possession of the district clerk, the only "still exist[ing]" evidence item was the DNA swab of the infant child in this case. The trial court found that the swab was not in a condition capable of being tested given that it had been stored in an open cardboard box in the district clerk's office and "has not been subjected to a chain of custody since the trial to establish confidence that it has not been substituted, tampered with, replaced, altered or remained uncontaminated to allow for testing."[9] *See Reed*, 541 S.W.3d at 770 (stating that evidence handled by number of people and stored "commingled in a common repository" cast "doubt on the evidence's integrity").

Concerning the remaining items that appellant sought to have tested—the seat covers (from appellant's truck) and the mattress covers (of the mattresses from the bedrooms of appellant's home), another threshold requirement under Chapter 64 is that "the convicted person establishes by a preponderance of the evidence that . . . the person would not have been

---

[9] We also note that the DNA paternity testing previously done in this case demonstrated that appellant's son and co-defendant was the father of the child. Thus, exculpatory evidence as to this DNA swab was presented to the jury at trial.

convicted if exculpatory results had been obtained through DNA testing." Tex. Code Crim. Proc. art. 64.03(a)(2)(A). This means that a convicted person must show a greater than 50% chance that he would not have been convicted if exculpatory results from the requested DNA testing had been available at trial. *Hall*, 569 S.W.3d at 655; *Reed*, 541 S.W.3d at 774; *see LaRue v. State*, 518 S.W.3d 439, 446 (Tex. Crim. App. 2017) ("This requires the convicted person to show that he, more likely than not, would not have been convicted if results of the requested testing exclude him."). "Exculpatory results" means only results excluding the convicted person as the donor of the DNA. *Hall*, 569 S.W.3d at 655–56; *Reed*, 541 S.W.3d at 774. The required showing has not been made if exculpatory test results would "merely muddy the waters." *LaRue*, 518 S.W.3d at 446; *Rivera*, 89 S.W.3d at 59.

As the trial court noted, appellant's motion "[did] not allege facts that would establish by a preponderance of the evidence that movant would not have been convicted if exculpatory results had been obtained through DNA testing." Instead, appellant merely summarily asserted that "[t]he testing of the list of evidence in this Affidavit; if it returns any useable DNA, will show that none of my DNA is on the evidence, and that the evidence would show my innocence." However, the "facts" asserted in his unsworn declaration recite trial testimony describing an incident in which appellant sexually assaulted J.J. in his truck. The lab testing on the seat covers before trial reflected that there were "no indications of semen on the upholstery," which included the seat covers of the driver's seat, the center seat, and the passenger seat of appellant's truck. Appellant failed to explain—or establish by a preponderance by the evidence—how DNA testing of the seat covers would produce exculpatory results that would

11

exonerate him. Given the absence of semen on the upholstery of appellant's truck,[10] DNA on the seat covers of someone other than appellant would neither support nor refute the alleged sexual contact. *See Rivera*, 89 S.W.3d at 60 n.20 (observing that "the absence of appellant's DNA would not indicate innocence because it could simply mean none was deposited"); *see, e.g.*, *Whitaker*, 160 S.W.3d at 9 (concluding that DNA test of murder weapon "would be meaningless" under facts of case).

Concerning the mattress covers, which remained in the custody of the police after being returned from the lab, the trial court noted the trial testimony that indicated that the crime lab did not test these items because, given the access to these items by multiple individuals in the home (including all three of the alleged perpetrators), they "were so covered with stains that testing was ruled out as being able to reveal anything probative." "[T]he significant possibility of DNA being deposited by an innocent person reduces the probative value of any exculpatory DNA test result," *Hall*, 569 S.W.3d at 658, and the probative value of DNA testing that excludes a defendant is diminished if multiple potential contributors could have handled the item sought to be tested, *see Dunning v. State*, 572 S.W.3d 685, 693 (Tex. Crim. App. 2019).

In sum, appellant has not shown by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing of the "still existing" items of evidence that he sought to have tested.

To succeed on his motion for postconviction DNA testing, appellant was required to establish all of Chapter 64's requirements. Given the deficits in appellant's motion and unsworn declaration, the record demonstrates that appellant failed to satisfy the statutory

---

[10] As the trial court noted in its findings, J.J. testified that appellant "used a condom and a spermicide during the assaults."

12

requirements set out in article 64.03. Thus, the trial court did not abuse its discretion in denying appellant's motion seeking DNA testing. *See Bell v. State*, 90 S.W.3d 301, 306 (Tex. Crim. App. 2002) (recognizing that "a court must order testing only if the statutory preconditions are met"). We overrule appellant's first point of error.

**Due Process Claim**

In his second point of error, appellant asserts that the trial court's denial of his motion for DNA testing violated his right to due process because "Chapter 64 was unconstitutionally applied to his situation."

It is difficult to discern what, exactly, appellant is complaining about in this point of error. Appellant acknowledges that there is no substantive due process right to postconviction DNA testing, *see District Attorney's Office for Third Judicial District v. Osborne*, 557 U.S. 52, 72 (2009) (declining to recognize freestanding, substantive due process right to DNA evidence), but appears to assert that, in requiring that "identity be an issue" in the case, the DNA testing statute violates procedural due process because "the failure to provide access to evidence for post-conviction DNA testing is an arbitrary, unconstitutional application of Chapter 64 to all similarly situated appellants and a clear violation of their due process rights." Appellant maintains that the requirement that "identity being an issue" should be limited to "stranger-victim misidentification cases." Thus, according to appellant, the DNA testing statute is unconstitutional as applied to him because his case did not involve "stranger-victim misidentification" since the child victim was acquainted with him.

Appellant's due process claim appears to raise an "as applied" constitutional challenge to the DNA testing statute. However, appellant presents this due process challenge for

13

the first time on appeal. He did not present a due process claim in his motion for DNA testing or otherwise present the claim to the trial court. Accordingly, appellant did not preserve this complaint for appellate review. *See* Tex. R. App. P. 33.1(a)(1)(A) (imposing requirement of making specific request, objection, or motion to preserve complaint for appellate review); *Reynolds v. State*, 423 S.W.3d 377, 383 (Tex. Crim. App. 2014) (stating that "'[a]s applied' constitutional claims are subject to the preservation requirement and therefore must be objected to at the trial court in order to preserve error"); *see also Curry v. State*, 186 S.W.3d 39, 42 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (concluding that due process challenge to article 64.03(a), which was not asserted at trial-court level, was waived and explaining that "[c]onstitutional rights, including the rights of due process and due course of law, may be waived if the proper request, objection, or motion is not asserted in the trial court").

Even assuming that appellant's due process claim has been preserved, "[t]here is no free-standing due-process right to DNA testing, and the task of fashioning rules to 'harness DNA's power to prove innocence without unnecessarily overthrowing the established system of criminal justice' belongs 'primarily to the legislature.'" *Gutierrez*, 337 S.W.3d at 888 (quoting *Osborne*, 557 U.S. at 62); *see Ex parte Mines*, 26 S.W.3d 910, 914 (Tex. Crim. App. 2000) (stating that there is no constitutional right to postconviction DNA testing). Concerning procedural due process in the context of postconviction relief, the United States Supreme Court has explained:

> A criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man. At trial, the defendant is presumed innocent and may demand that the government prove its case beyond reasonable doubt. But once a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears. Given a valid

14

conviction, the criminal defendant has been constitutionally deprived of his liberty.

The State accordingly has more flexibility in deciding what procedures are needed in the context of postconviction relief. When a State chooses to offer help to those seeking relief from convictions, due process does not dictate the exact form such assistance must assume. [A convicted person's] right to due process is not parallel to a trial right, but rather must be analyzed in light of the fact that he has already been found guilty at a fair trial, and has only a limited interest in postconviction relief. . . .

Instead, the question is whether consideration of [a convicted person's] claim within the framework of the State's procedures for postconviction relief offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, or transgresses any recognized principle of fundamental fairness in operation. Federal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided.

*Osborne*, 557 U.S. at 68–69 (internal quotation marks, alterations, and citations omitted).

As discussed in the previous point of error, the record demonstrates that, given the deficiencies in appellant's motion and his accompanying unsworn declaration, the trial court correctly determined that several requirements established by the Legislature for postconviction DNA testing in Chapter 64 were not met in this case. The trial court did not conclude—and neither do we—that the statutory requirement that identity be an issue in the case was not established here. Thus, even if the statute's requirement that identity be an issue somehow violates due process—and we do not conclude that such a requirement is "fundamentally unfair" or "transgresses any recognized principle fundamental fairness in operation," *see id.* at 59—we can perceive no due process violation from the trial court's ruling here since it was not based on the "identity as an issue" requirement. *See Prible v. State*, 245 S.W.3d 466, 470 (Tex. Crim. App. 2008) (stating that "[t]here is nothing unreasonable or unjust with the way Chapter 64 deals with requests for DNA testing" in rejecting claim that Chapter 64 requirement that case raise

issue of identity violates due process rights because it prevents introduction of evidence that someone else committed crime); *see also Cravin v. State*, 95 S.W.3d 506, 511 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (holding that "there is nothing fundamentally unfair about the procedures set out in chapter 64 and followed by the convicting court" and that "the [Chapter 64] procedures do not violate appellant's due process rights"); *Christ v. State*, No. 14-08-00902-CR, 2009 WL 5227884, at *3 (Tex. App.—Houston [14th Dist.] Sept. 1, 2009, pet. ref'd) (mem. op., not designated for publication) ("There is nothing fundamentally inadequate about article 64.03's procedure for post-conviction DNA testing and we should defer to the legislature's determinations."); *cf. Bell*, 90 S.W.3d at 305–06 (rejecting challenge that denial of request for DNA testing violated due process rights).

We overrule appellant's second point of error.[11]

**CONCLUSION**

Applying the appropriate standard of review, we conclude that the trial court's denial of appellant's motion for postconviction DNA testing is supported by the record and, therefore, was not an abuse its discretion. Further, we fail to perceive any due process violation

---

[11] Within his complaint that the trial court's application of the statute violated his right to due process, appellant seems to suggest a violation of article 38.43 of the Code of Criminal Procedure, which governs the retention of evidence containing biological material. However, such a complaint arguably falls outside the purview of the Chapter 64 articles and thus falls outside our appellate jurisdiction under Chapter 64. *See Weems v. State*, 550 S.W.3d 776, 781 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *In re Garcia*, 363 S.W.3d 819, 822 (Tex. App.—Austin 2012, no pet.); *Reger v. State*, 222 S.W.3d 510, 513 (Tex. App.—Fort Worth 2007, pet. ref'd); *see also* Tex. Code Crim. Proc. art. 64.05 (authorizing appeal "under this chapter"). Moreover, appellant failed to assert any violation of the statute in the trial court. Therefore, to the extent that appellant attempts to raise such a complaint here, he failed to preserve it for appellate review. *See* Tex. R. App. P. 33.1(a)(1)(A).

in the trial court's denial of DNA testing by adhering to the statutory requirements.  Accordingly,

we affirm the trial court's order denying appellant's motion seeking postconviction DNA testing.

_____

Edward Smith, Justice

Before Chief Justice Byrne, Justices Triana and Smith

Affirmed

Filed:   April 8, 2021

Do Not Publish